UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VANIA SANTIERO, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-10-1763 |
| | § | |
| DENNY'S RESTAURANT STORE, | § | |
| THE WOODLANDS, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

Pending before the court is a motion for summary judgment filed by defendants Denny's

Restaurant Store, the Woodlands (also referred to in the pleadings as "Den-Forest LLP") and Assad

A. Shorrosh, with respect to all claims raised against them. Dkt. 20. After review of the motion, the

relevant pleadings, and the applicable law, the motion (Dkt. 20) is GRANTED IN PART AND

DENIED IN PART as set forth with more particularity below.[1]

## BACKGROUND

Vania Santiero ("Santiero" or "plaintiff") was hired as a server at a Denny's Restaurant in

the Woodlands on August 29, 2009, and she was employed there until she voluntarily left her

position on December 9, 2009. Dkt. 21-1 at 1-2. Defendant Den-Forest LLP ("Den-Forest") owns

the store, and Assad A. Shorrosh is the managing member of Den-Forest. Dkt.20-1 at 1. Plaintiff

alleges that her supervisor, Shadi Hadi, began harassing her the moment she began working by

"grabbing her bottom" on August 29, 2009. The following day, Hadi demanded that Santiero expose

herself to him in order to be placed on the work schedule. Dkt. 21-1 at 2. She complied by lifting

_____

[1]       Defendant Shadi Hadi has not moved for summary judgment, and all claims made
against him by Santiero (Counts 1, 2, 3, 4, 5, and 9) remain pending.

her shirt, but then Hadi allegedly assaulted Santiero by following her into a restroom where he pulled

her shirt up and fondled her without her consent.  *Id.*  Santiero did not report Hadi's actions until she

called Assad Shorrosh on September 15, 2009.  Dkt. 20-1 at 2.  Hadi was suspended by Den-Forest

on September 17, 2009, and Hadi's employment was terminated on September 21, 2009.  Dkt. 20-1

at 3.  Santiero worked for Den-Forest without further incident until her voluntary resignation almost

three months later.

Plaintiff asserts claims against all named defendants for *quid pro quo* sexual harassment

(Count 1) and a hostile work environment (Count 2) arising under Title VII of the Civil Rights Act

of 1964 ("Title VII").  42 U.S.C. § 2000e et seq.  She also sets forth state law claims against

defendant Hadi, and against defendants Skorrosh and Den-Forest vicariously as Hadi's employers,

for sexual assault (Count 3), assault (Count 4), offensive bodily contact (Count 5), and intentional

infliction of emotional distress (Count 9).  Direct claims under state law are alleged against Shorrosh

and Den-Forest for negligence (Count 6), gross negligence (Count 7), and premises liability

(Count 8).

Defendants Assad Shorrosh and Den-Forest move for summary judgment with respect to all

claims asserted against them.  Dkt. 20.  Plaintiff has responded, and has conceded that summary

judgment is appropriate as to certain claims.  Dkt. 21.  The moving defendants have filed a reply.

Dkt. 23.  The motion is now ripe for disposition.

## ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV.

P. 56(c)); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986).  An issue is "material" if its resolution could affect the outcome of the action.  *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).  "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party."  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact.  *Id.* at 322.  If the moving party fails to meet this burden, then it is not entitled to summary judgment and no defense to the motion is required.  *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial."  *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25.  To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting Fed. R. Civ. P. 56(e)).

3

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

## B.  Concessions by plaintiff.

### 1.  Defendant Assad Shorrosh.

Plaintiff concedes that summary judgment is appropriate with respect to all claims against defendant Assad Shorrosh. Therefore, the motion for summary judgment is GRANTED as to defendant Shorrosh, and he is dismissed from this lawsuit.

### 2.  Defendant Den-Forest.

Plaintiff also concedes that summary judgment is appropriate for defendant Den-Forest with respect to her Title VII claim for a hostile work environment (Count 2), and her state law claims against Den-Forest for negligence and gross negligence (alleging negligent supervision and retention)

4

(Counts 6 and 7), premises liability (Count 8), and intentional infliction of emotional distress (Count 9).  Dkt. 21-1.  Den-Forest's motion for summary judgment is, therefore, GRANTED as to Counts 2, 6, 7, 8, and 9.

## C.    Analysis

Santiero's concessions, and Hadi's failure to move for summary judgment, leave only her Title VII claim for *quid pro quo* sexual harassment (Count 1) against Den-Forest, and her state law vicarious liability claims against Den-Forest (Counts 3, 4 and 5) to be addressed.

### 1.    *Quid pro quo* **sexual harassment - submission as "tangible employment action."**

A plaintiff alleging sexual harassment under Title VII may assert either *quid pro quo* harassment, or harassment that creates a hostile work environment.  The court's first task in evaluating a claim of sexual harassment is to determine whether the *quid pro quo* or hostile work environment standard applies.  *Williams v. Barnhill's Buffet Inc.*, 290 F. App'x 759, 761 (5th Cir. 2008) (citing *Casiano v. AT & T Corp.*, 213 F.3d 278, 283 (5th Cir. 2000)).  This determination turns on whether the plaintiff has suffered a "tangible employment action."  *Casiano*, 213 F.3d at 283. If she has, her suit is classified as a *quid pro quo* case.  If there is no evidence of a tangible employment action, then the claim is one for a hostile work environment.  *Id.*  In a hostile work environment case where the actions of a supervisory employee are at issue, an employer may assert what is known as the *Ellerth/Faragher* defense.[2]  When available, this affirmative defense requires that the employer prove both that it exercised reasonable care to prevent and correct promptly any

---

[2]      The defense is named for the two Supreme Court cases which established the test for determining employer liability for harassment of employees by supervisory personnel, *Burlington Ind., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275 (1998).

harassing behavior by a supervisor, and that the plaintiff failed to take advantage of any preventative or corrective opportunities the employer provided. *Faragher*, 524 U.S. at 807.

Plaintiff concedes that she cannot establish a hostile work environment claim, as opposed to a *quid pro quo* claim. Dkt. 21. The reason for this concession is clear from the record. Den-Forest has presented uncontradicted evidence that it reacted to plaintiff's initial complaint of harassment quickly and effectively by immediately investigating Hadi's actions, and then firing him, all within a matter of days of plaintiff's complaint. Den-Forest also has presented uncontradicted evidence that it had a sexual harassment policy in place, but that plaintiff did not report Hadi's actions for two weeks. Thus, the record establishes that Den-Forest is entitled to assert the *Ellerth/Faragher* affirmative defense to Santiero's hostile work environment claim. The only issue with regard to Santiero's sexual harassment allegations is whether she can satisfy the requirements for a *quid pro quo* claim, which would prevent Den-Forest from asserting that defense.

Under the *quid pro quo* theory, Santiero must show she suffered a "tangible employment action" as a result of her "acceptance or rejection of [her] supervisor's alleged sexual harassment." *Casiano*, 213 F.3d at 283. In this respect, a "tangible employment action" constitutes "a significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761; *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 772 (5th Cir. 2009).

In this case, Santiero has provided no evidence that she suffered a tangible employment action as a result of Hadi's actions. Indeed, she argues the opposite–that her submission to Hadi's initial request was the reason that she *avoided* a tangible employment action, i.e., she avoided being kept off of the work schedule. Santiero argues that her fear of the threatened adverse action, and her subsequent submission to Hadi's demand in return for avoiding the threatened action, amounts to

a tangible employment action for purposes of Title VII.   This situation, referred to by some courts as the "submission as tangible employment action" scenario, has caused a split among courts attempting to analyze *quid pro quo* claims where no "tangible employment action" is apparent.

The Courts of Appeals for the Second and Ninth Circuits have held that a "tangible employment action" occurs where a plaintiff accedes to a supervisor's demand for sexual favors in order to avoid being fired.  *Jin v. Met. Life Ins. Co.*, 310 F.3d 84, 94 (2d Cir. 2002);  *Holly D. v. California Institute of Technology*, 339 F.3d 1158, 1167 (9th Cir. 2003).  Thus, in those circuits, Santiero's claim would appear to entitle her to hold Den-Forest vicariously liable for Hadi's actions even though no change in employment status occurred.

The Court of Appeals for the Fifth Circuit has not directly addressed this issue.  However, several district courts outside of the Second and Ninth Circuits have criticized the practice of allowing submission to take the place of an actual "tangible employment action."

In *Arnold v. Answer Group, Inc.*, C.A. No. 07-1040, 2008 WL 2700295 (W.D. La. July 10, 2008), Judge Walter declined to follow *Jin* and *Holly* in a case where no tangible employment occurred because the employee submitted to the supervisor's demands, and he noted that the Supreme Court clarified the underlying purpose of the *Ellerth/Faragher* defense after both *Jin* and *Holly* were decided.  The Supreme Court explained:

> [O]fficial directions and declarations are the acts most likely to be brought home to the employer ...  Absent "an official act of the enterprise," as the last straw, the employer ordinarily would have no particular reason to suspect that a resignation is not the typical kind daily occurring in the work force.  And as *Ellerth* and *Faragher* further point out, an official act reflected in company records–a demotion or a reduction in compensation, for example–shows "beyond question" that the supervisor has used his managerial or controlling position to the employee's disadvantage. Absent such an official act, the extent to which the supervisor's misconduct has been aided by the agency relation ... is less certain.  That uncertainty, our precedent establishes, justifies affording the employer the chance to establish, through the *Ellerth/Faragher* affirmative defense, that it should not be held vicariously liable.

7

*Pa. State Police v. Suders*, 542 U.S. 129, 148-49, 124 S.Ct. 2342 (2004) (internal citations omitted). Thus, *Suder* (although not a *quid pro quo* case) stands for the proposition that an employer is entitled to the *Ellerth/Faragher* defense where there is "uncertainty" concerning how the power granted to the supervisor by the employer was a contributing factor in the harassment.  In order to be consistent with this understanding of the affirmative defense, where a supervisor seeks sexual encounters with an employee but no official action is taken, and regardless of whether the demand is acceded to or rebuffed, then the *Ellerth/Faragher* affirmative defense should apply.  This is the case because there is no "official act of the enterprise" to show that the supervisor used his power to the employee's disadvantage.  *Id.*  Finding a tangible employment action consistent with *Ellerth* requires proof of "an official act of the enterprise, a company act" such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 624 U.S. at 761-62.  Thus, it is only where an employee's acceptance or refusal of a sexual overture is followed by some official action consistent with those just described, actions that change the employee's status, that denying an employer the *Ellerth/Faragher* affirmative defense makes sense as judicial policy.  As Judge Walter so aptly put it:

> The reasoning of the *Suders* Court applies with equal force in a submission case such as this where the employee's compliance with her supervisor's sexual demands maintains the *status quo*.  Without any visible change in Arnold's employment circumstances in the eyes of those higher up in the supervisory chain, the employer has no way of knowing that its delegated authority has been brandished in such a way as to coerce sexual submission.  In the absence of any notice of wrongdoing, this Court finds an employer should be allowed an opportunity to establish the affirmative defense provided for by *Ellerth/Faragher*.

*Arnold*, 2008 WL 2700295 at *7 (internal quotations and citations omitted).  The court finds Judge Walter's analysis persuasive.

This court, therefore, joins the courts that have questioned the wisdom of finding a "tangible employment action" where the employee has acceded to a supervisor's demand and has thereby *avoided* a tangible employment action.  E.g., *Arnold*; *Lutkewitte v. Gonzales*, 436 F.3d 248, 254 (D.C.Cir. 2004) (Brown, concurring) (*Jin* and *Holly* "eviscerated the 'tangibility' requirement" by evaluating tangibility from the employee's perspective); *Tobin v.Irwin Mort. Corp.*, C.A. No. 03-4305, 2006 WL 861258, * 10-11 (N.D.Ill. March 31, 2006) (submission claim with respect to single sexual encounter not followed by tangible employment action not sufficient; rejecting analysis in *Jin*).  The court finds that Supreme Court precedent, and particularly *Suder*, supports focusing the inquiry on the information available to the employer in a particular situation, and not on the employee's (however real) subjective fear of adverse action.  "However repulsive a supervisor's behavior may be, the extent to which an employer has aided the supervisor's harassment is unclear in the absence of an official act altering the conditions of the victim's employment."  *Doe v. Lansal, Inc.*, C.A. No. 08-5983, 2009 WL 5166224 at *5 (N.D. Ill. December 22, 2009).

It must be remembered that the *Ellerth/Faragher* affirmative defense is premised upon an employer taking affirmative, preemptive steps to avoid sexual harassment in the workplace, and then following through on those rules by remedying any reported harassment.  It is counter-productive to encourage employers to take such actions, but then deny an employer who has done so the benefit of its proactive behavior, and to do so not because the employer arguably had notice of the misbehavior because it arose from a "tangible employment action" that is an official act of the employer, but to do so instead because the victimized employee does not report the sexual harassment.[3]  Evaluating "tangibility" from the perspective of the employee, rather than from what

---

[3]     The court certainly does not discount the difficult situation employees like plaintiff are placed in when a supervisor demands sexual favors.  Nor is the court's ruling a moral judgment

9

an employer objectively is on notice has occurred, would, as Judge Brown argued in his concurrence in *Lutkewitte*, eviscerate the requirement of a "tangible" employment action. *Lutkewitte*, 436 F.3d at 269.

Therefore, plaintiff has not established that she was subjected to a "tangible employment action" and she cannot, therefore, make out a *quid pro quo* claim. Den-Forest's motion for summary judgment on plaintiff's Title VII claim for *quid pro quo* sexual harassment (Count 1) is GRANTED.

### 2.      State law claims - respondeat superior liability.

Santiero also maintains several tort claims against defendant Hadi, and she asserts that Den-Forest is liable for three of these claims (sexual assault, assault and battery) because of its relationship to Hadi. Den-Forest first asserts that these claims are barred by preemption pursuant to the decision in *Pfau v. Reed*, 125 F.3d 927 (5th Cir.1 997).[4] *Pfau*, however, applies only to claims against **federal** employers. Den-Forest is not a federal employer. Therefore, *Pfau* does not apply and there is no preemption in ths case. *Lloyd v. Made-Rite Co.*, C.A. No. 9:11-6, 2011 WL 846105 at * 3 (E.D. Tex. 2011).

Den-Forest next asserts that Santiero cannot establish respondeat superior liability under state law. One of the bases for vicarious liability asserted by Santiero is that Hadi, as the manager of the Dennys location at issue, was a "vice-principal" of Den-Forest. "A vice-principal represents the

---

of plaintiff or her actions. Plaintiff will have her day in court with respect to Hadi's alleged violations of Title VII. The narrow Title VII question addressed in this order is whether the applicable test for vicarious liability has been met as to Den-Forest.

[4]      The Supreme Court granted certiorari in *Pfau*, vacated the judgment, and remanded "for further consideration in light of" two recently decided Supreme Court cases. *Pfau v. Reed*, 525 U.S. 801, 119 S.Ct. 32 (1998). On remand, part of the opinion relating to preemption was reinstated by the Fifth Circuit. *Pfau v. Reed*, 167 F.3d 228, 229 (5th Cir.), *cert. denied*, 528 U.S. 813, 120 S.Ct. 49 (1999).

corporation in its corporate capacity, and includes persons who have authority to employ, direct, and discharge servants of the master, and **those to whom a master has confided the management of the whole or a department or division of his business**." *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999) (emphasis added).  A vice-principal's acts are the acts of the corporation itself, and corporate liability in this situation is direct rather than vicarious.  *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997).  Hadi was the manager of the Denny's Restaurant at issue, and he possessed substantial authority over the employees there, much like the supervisory employee in *Bruce*, who had authority to employ, direct, and discharge employees at a particular facility.  Thus, there is sufficient evidence to raise a genuine issue of material fact concerning Hadi's status as a "vice-principal" of Den-Forest for purposes of imputing his actions to Den-Forest under Texas law. Therefore, Den-Forest's motion for summary judgment is DENIED with respect to Counts 3, 4 and 5.

### CONCLUSION

After review of the motion for summary judgment, the response, the reply, and the applicable law, the motion is GRANTED as to all claims against defendant Assad Shorrosh, and as to all claims against defendant Den-Forest with the exception of the state law claims set forth in Counts 3, 4, and 5 of the first amended complaint.

It is so ORDERED.

Signed at Houston, Texas on April 13, 2011.

Gray H. Miller
United States District Judge

11